EXHIBIT 4

```
                                                              1
     7clPdanC
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    DANIELS,
3
4                   Plaintiff,
4
5              v.
5
6    THE CITY OF NEW YORK,
6
7                   Defendant.
7
8    ------------------------------x
8                                        New York, N.Y.
9                                        December 21, 2007
9                                        4:50 p.m.
10
10   Before:
11
11                   HON. SHIRA A. SCHEINDLIN,
12
12                                        District Judge
13
13
14
15
16
17
18
19
20
21
22
23
24
25
          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
```

```
        7clPdanC
1                (In open court)
2                MS. GROSSMAN:  Your Honor, may I just bring one issue
3       to your attention?
4                THE COURT:  Not until I reach you.
5                Good afternoon, Mr. Moore.
6                MR. MOORE:  Good afternoon, Judge.
7                THE COURT:  Good afternoon, Ms. Costello.
8                MS. COSTELLO:  Yes, good afternoon, your Honor.
9                THE COURT:  Mr. Franklin.
10               And who is the person in between all of you?
11               MS. COSTELLO:  Your Honor, this is Garrett Wright, he
12      is a recent law graduate from our office.
13               THE COURT:  And good afternoon, Ms. Grossman and Ms.
14      Donahue.
15               Yes, what is it?
16               MS. GROSSMAN:  There may be some reference to some
17      confidential material during our conference, and I just wanted
18      to bring that to the Court's attention, in that we believe the
19      courtroom might have to be sealed for a very brief moment.  For
20      now, plaintiff's counsel is not prepared to raise those issues
21      while we have other people here in the courtroom.
22               I think we are fine to keep the courtroom open.
23               THE COURT:  I know who two of the people are, they are
24      here on the criminal case.  Who are the other people?
25               A VOICE:   We are with the Center for Constitutional
                 SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
```

3

```
         7clPdanC
 1    Rights.
 2              THE COURT:  Are you both attorneys?
 3              A VOICE:  I am an attorney.
 4              I am a paralegal.
 5              THE COURT:  They are -- I understand your point.  As
 6    soon as I can, I'd be happy to get the criminal case out of the
 7    courtroom.  As soon as I can.
 8              Let me get started on this matter of Daniels versus
 9    The City of New York.
10              I have a letter from the plaintiffs dated December 14,
11    2007.  And they are seeking a number of things.  But I suppose
12    on the most immediate basis they are seeking some kind of an
13    order extending the Court supervision by no less than a few
14    months, for the sole purpose of letting them fully brief the
15    request for relief in this letter.  So there is no rush.
16              So they are saying, the best way to have no rush and
17    have no air is to have the defendant consent to a two-or-three
18    month adjournment minimally, just so everybody can get these
19    issues fully briefed and on the table.  And if the Court denies
20    all the relief, so be it.
21              But rather than have them work it out in eight or nine
22    days, you are saying just to get some kind of interest of
23    justice extension or something.
24              So I won't go into the rest of the relief they seek,
25    more in terms of summarizing the letters, but the largest
                 SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
```

4

7clPdanC

```
 1   overall summary is that there has been a lack of compliance in
 2   various ways with the stipulation of settlement.  And so the
 3   Court should modify the stipulation of settlement order,
 4   specific performance of certain aspects of the stipulation of
 5   settlement.
 6           And then they ask for the third point of relief, which
 7   is what I think you were referring to, where they think there
 8   should be a modification of the protective order as to some of
 9   the terms that have been declared confidential.
10           One reason is they say the Court will have to use some
11   of the confidential information to determine what to do with
12   the motion.  But, secondly, they are saying some of it has been
13   disclosed by the defendant in another context, and it is
14   already much discussed, and you should withdraw the designation
15   if it has been publicly disclosed.
16           Then I received a letter in response dated December
17   19, but actually received in chambers December 20, which was
18   yesterday.  And yesterday was a relatively busy day on the
19   bench.  So the long and short of it, I haven't had a chance to
20   study the attachments carefully.  But I did have the
21   opportunity to read the letter, which itself was long, I guess,
22   the pages aren't numbered so I can't tell how many, there is a
23   lot of single-spaced pages, five or six.  And I did read them.
24           And the quick summary of the defense letter is that
25   plaintiffs want to pretend that the settlement agreement says
```

5

7clPdanC

1  things it doesn't say.  So the alleged breaches aren't breaches
2  at all, because the settlement doesn't require the defendant to
3  do what the plaintiffs say is a breach.
4          And defendants write a number of times in the letter,
5  plaintiffs may have wanted the stipulation of settlement to say
6  these things, but it doesn't.  And there were intense and
7  detailed settlement negotiations.  And if they didn't get what
8  they didn't get, they can't complain about it now.
9          And so the defendant opposes all the requests for
10 relief, opposes any modification of the stipulation, opposes
11 any order for specific performance, opposes any extension of
12 the December 31 deadline, and opposes the modification of the
13 protective order.
14         All of that said, it would nonetheless be helpful to
15 the Court and all the parties, in the nine days remaining
16 between now and the 31st of December, to be -- deny this in an
17 orderly fashion by extending the deadline.
18         If the defendant refuses to do that, then the city is
19 will write briefs every day for the next nine days.  And if
20 that's how you want to spend your Christmas and New Year's,
21 that's up to you.
22         You may have the better of all the arguments, but I
23 need to get enough of a record to figure it out.  And if you
24 want to do that much all through Christmas and New Year's.
25         Who is carrying the lead?
           SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

6

7clPdanC

```
 1            MR. MOORE:  Ms. Costello.
 2            THE COURT:  Well, Ms. Costello, I think you have
 3   sought of the burden to make your oral argument the equivalent
 4   of a reply letter.  I think you need to answer all the points
 5   that Ms. Grossman made in her very thorough submission point by
 6   point.  Because her points, as you notice, stay closely away
 7   from the merits, so to speak.  And they try not to tell me
 8   about whether or not, you know, there is a policy of
 9   discrimination, or whether your statistics show discrimination.
10   They want to talk procedure and they want to talk about what is
11   or isn't in the stipulation.  What rights you have or don't
12   have in the stipulation.
13            And I understand that is a contract and they are
14   saying, no matter how bad things may be, that's not part of
15   this lawsuit.
16            Do you have another lawsuit to bring?
17            But they placed some interesting alliance on the
18   Latino Officers Association of The City of New York, where they
19   quoted the Court as denying any further relief.  And they
20   thought that was a pretty good precedent for them.  And it did
21   seem to be a pretty good precedent for them.
22            For example, at one point the Court -- now there is no
23   guarantees in discrimination in the settlement document, and
24   that Court said, quote, even a convincing demonstration of
25   persistent discrimination would not mean that the defendants
```

```
                                                               7
          7clPdanC
 1   are violating the provisions of the settlement agreement.
 2            That, sort of, is exactly the situation I may be in.
 3   You may be sort of seeing problems that are all very
 4   interesting but not part of this settlement agreement.  So I
 5   think you need to give me a reply brief, if you wish, orally.
 6            MS. COSTELLO:  Yes, your Honor.  I can try my best.
 7            One point that the city raises about just the fact
 8   that there are no in substantial remedies in the consent
 9   decree.
10            THE COURT:  I have the consent decree.  I think
11   somebody attached it as Exhibit A.
12            MS. GROSSMAN:  Yes, your Honor.
13            THE COURT:  So you are going to have to show me, don't
14   tell me you disagree, show me the language.
15            MS. COSTELLO:  In section C1, your Honor, in section
16   C1.
17            Let me just back up one second, your Honor.  I think
18   there were two ways, and this is part of what we would like to
19   brief for the Court, there are two ways that the Court could
20   extend the life of the consent decree and also grant our
21   request for modification.  One is within the Court's equitable
22   powers and the second is standard under Ruffo for modification.
23            I think what Ms. Grossman's letter focuses on is the
24   straight reading, the non-compliance and specific performance
25   and contempt proceeding that would result, flow from that which
             SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
```

7clPdanC

1    the dispute resolution mechanism in the agreement itself, if
2    you look at the standard under Ruffo, a much more flexible
3    standard that takes into account the public interest and the
4    change in circumstances.  The city doesn't address that at all.
5           THE COURT:  No, they never cite Ruffo, I don't think
6    they did.  I read it fairly quickly.
7           MS. COSTELLO:  Under the standard in Ruffo, we think
8    that the modification would be appropriate.
9           Putting that aside for the moment, and just looking at
10   the language of the consent decree, section C1 of the
11   stipulation requires that the NYPD shall have a written policy
12   regarding racial or ethnic or national origin profiling, that
13   complies with the United States Constitution and the New York
14   State Constitution.
15          And I think that we have shown that there is evidence
16   of racial profiling going on.
17          THE COURT:  Even if there is evidence of racial
18   profiling, that paragraph doesn't have anything to do with
19   that.
20          It says that the NYPD shall have a written policy that
21   complies with the Constitution of both the United States and
22   New York State.  Okay, that's what they have to have.
23          Do they have -- let me give you an example, let's say
24   they had a written policy that complies with it, and that they
25   violated it all the time.  They wouldn't have violated

SOUTHERN DISTRICT REPORTERS, P.C.                (212) 805-0300

9

7clPdanC
1   paragraph 1.  Paragraph 1 says you have to have a written
2   policy that complies with the --
3           MS. COSTELLO:  -- if you read paragraph C1 in
4   connection with, which requires training on the policy,
5   training on the officers in stop and frisk procedures, in
6   section E there is a provision in there for palm cards which go
7   out to individuals in the community.  If they believe they have
8   been improperly stopped and frisked they can file a complaint
9   with the Civilian Complaint Review Board.
10          We think that all of that means there was an
11  implication of this policy --
12          THE COURT:  -- you are asking me to rewrite your
13  settlement agreement.  This is hypothetical, it is not a fact.
14          I don't want anybody to be confused by reading the
15  record.  I am saying hypothetically if they have a written
16  policy that complies with the Constitution of the United States
17  and of New York State, regarding racial and ethnic origin
18  profiling, they satisfied number 1, paragraph C1.
19          Even if there were evidence that they were violating
20  their own policy, they still say that.
21          Number 1 only requires them to have appropriate
22  written policy.
23          That seems to be the whole point of this notion that
24  there is no guarantees in this agreement.  Nowhere in the
25  agreement is the city guaranteed that it will not have an

```
                                                              10
          7clPdanC
  1    inappropriate racial profiling.  There is no guarantee in here.
  2    It is exactly the same thing that Judge Kaplan was trying to
  3    say.
  4              MS. COSTELLO:  If you look at section C2, which says
  5    that the NYPD may alter the policy --
  6              THE COURT:  -- let me read that.
  7              It says:  (Reading)  The NYPD may alter the racial
  8    profiling policy at any time in compliance with paragraph C1.
  9              That just means if they have the policy that isn't in
 10    compliance, and they want to make a written policy that is in
 11    compliance, I don't see that number 2 provides you the
 12    guarantee that you seem to be talking about.
 13              MS. COSTELLO:  I think number 2 also relates to
 14    altering the policy.  And I think that the intent of this
 15    agreement was not to bargain for a policy that meant nothing
 16    that the NYPD could just go out and violate people's Fourth
 17    Amendment rights and Fourteenth Amendment rights with no
 18    recourse to plaintiffs.  I think that would --
 19              THE COURT:  -- maybe it is an -- why don't you file a
 20    lawsuit?
 21              MS. COSTELLO:  We did, we are here.
 22              THE COURT:  No, you are struggling with the December
 23    31, 2007 deadline in a 1999 case.  And if you got proof of
 24    inappropriate racial profiling in a good constitutional case,
 25    why don't you bring a lawsuit?  You can certainly mark it as
                   SOUTHERN DISTRICT REPORTERS, P.C.         (212) 805-0300
```

```
          7clPdanC
 1   related.
 2             How could it not be related to this whole long seven
 3   or eight years we have lived together on this case?  Because
 4   you are trying to put a square peg in a round hole.  And trying
 5   to force yourselves to argue what the settlement means, that it
 6   doesn't mean if you have a timely lawsuit -- you seem to have
 7   compiled interesting arguments Ms. Grossman has not rebutted --
 8   maybe she did, that's why we didn't do something, because we
 9   didn't want them to write this letter, she -- let's just say
10   she hasn't substantially responded to your letter.  If one had
11   only your letter, it would look like you have a lawsuit.  So
12   instead of struggling to telling me about a stipulation of
13   settlement, why don't you craft a lawsuit?
14             MS. COSTELLO:  We could, but the only other issue
15   is --
16             THE COURT:  That's what would I like to turn to.
17   Can we talk about the noncompliant?
18             MR. MOORE:  Judge, could I just say a few things,
19   before we do that?  About the notion that what we were
20   bargaining for was simply a piece of paper that had no
21   substance to it.
22             THE COURT:  I didn't say it had no substance.  But it
23   didn't have the word guarantee.  Didn't she write in her letter
24   there were no guarantees?  And Judge Kaplan talked about that
25   in his settlement.  I didn't have time to read his decision, I
```

```
                                                          12
          7clPdanC
 1   only read these two letters.  Sometimes a Judge has some time
 2   and sometime not.  I didn't have a lot of time, especially the
 3   city's letter just came in yesterday.
 4              MR. MOORE:  To the extent that given my involvement
 5   with the case in the beginning, I can shed any light on that,
 6   on what our understanding was, about what we were bargaining
 7   for.
 8              We believed that we were getting a policy that the
 9   city would put into effect.  That was, it is reason why we
10   brought the lawsuit.  And certainly as Ms. Costello said, there
11   were not just -- they didn't just agree to change the written
12   policy, they agreed to do several things.
13              THE COURT:  But we have to find them chapter and
14   verse, because their argument -- I'd like to interrupt you just
15   for a minute, and take this criminal case.
16              (Recess)
17              THE COURT::  I think you were speaking, Mr. Moore.
18              MR. MOORE:  I had been making a general observation
19   about my understanding in the course of our negotiating this
20   decree.
21              I find it hard to believe that The City of New York
22   would, in effect, say to this Court, or to anybody, well, we
23   have a policy, but we don't have to follow it.
24              THE COURT:  I was saying as a hypothetical.  I didn't
25   say they said --
              SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
```

13

7clPdanC

```
 1              MR. MOORE:  -- I think they say that in their letter,
 2    that we can change the policy -- we can -- as long as we have a
 3    written policy, we can essentially do whatever we want.
 4              I just think that if that's, in fact, what the
 5    position of the city of New York is, it is a significant
 6    difference from what we understood we were getting, which was a
 7    policy that had some substance to it.  Not just a policy on
 8    paper.
 9              It's sort of like passing the Thirteenth Amendment
10    abolishing slavery as long as we have an amendment that you
11    can't have slavery.  But in practice we still have slavery.
12              It seems to me it is a hyper technical interpretation
13    of the words in the decree.  The decree was meant to address
14    what we believed was a serious issue with respect to racial
15    profiling which, apparently, has not gone away.  And even their
16    own Rand study that they commissioned, suggests that at least
17    with respect to the frisks, maybe not the stops, but even the
18    frisks, that there is a racial disparity, that's their own
19    expert's testimony, their own expert's report.
20              So I just find the notion that we were tying to
21    basically engage in a law school exercise of getting a policy
22    that had no substance --
23              THE COURT:  -- well --
24              MR. MOORE:  -- contrary to my understanding and
25    contrary --
```

SOUTHERN DISTRICT REPORTERS, P.C.              (212) 805-0300

14

7clPdanC
```
 1              THE COURT:  -- I will quote from page 4 of the letter,
 2    the first full paragraph.
 3              (Reading)  In conclusion, it is important to state
 4    that plaintiffs vigorously bargained for a provision which
 5    would create for an obligation on the part of the defendants to
 6    guarantee that there would be no racial profiling.  The city
 7    refused to agree to such a term for reasons here are
 8    negotiated.
 9              MR. MOORE:  I don't know, there is no citation to
10    that, there is no -- it is sort of, in a way, it was -- maybe
11    it was by being silent they hoped that we wouldn't say to you,
12    say to the city, and you are going to comply with that, you are
13    going to actually implement the policy.
14              I don't think -- I mean, a municipality that agrees to
15    adopt a policy should be then saying, now that we have adopted
16    a written policy, we don't have to implement it in practice.
17    When, in fact, they were making -- they were, you know, there
18    was information sent out that there was a racial --
19              THE COURT:  -- what I am trying to say -- I am sure I
20    am going to get in trouble for saying it, for $65 you can bring
21    that lawsuit.  You can simply --
22              MR. MOORE:  $350.
23              THE COURT:  I knew I had it wrong.
24              The city violates its own written policy, the city has
25    a policy that violates -- they have violated their policy, here
```
                  SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

```
                                                             15
          7clPdanC
 1   is the proof of it, please give us the remedy.  Injunction or
 2   damages, or whatever lawyers ask for in compliance.
 3             So for $350 you can bring that lawsuit and it is
 4   timely.
 5             I don't understand why we have to potentially have,
 6   you know, months of briefing when it does fit under this
 7   stipulation or it doesn't, that Ruffo applies or it doesn't
 8   that the Court has the power to extend the supervision, that we
 9   want an immediate appeal to the circuit.  Why do you need that
10   if you have a lawsuit?  Bring it.  They have a written policy,
11   right?
12             MS. GROSSMAN:  Yes, your Honor.
13             THE COURT:  If you think they are violating their
14   written policy, sue them.
15             MS. COSTELLO:  Your Honor, just two quick points.  One
16   is about the point your Honor's raising about just filing a new
17   lawsuit.
18             The one issue for us in that particular scenario is
19   that the protective order is still in effect.  Once this case
20   ends, we have to give back all of the data.  So unless the
21   Court is prepared to modify the protective order and lift it,
22   we would not have the benefit of that data until we filed a new
23   case and engaged in discovery and battles with the city to get
24   that same information again, and then another battle over a
25   protective order again.
             SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
```

16

7clPdanC

```
 1              So we see it in the interests of judicial economy, if
 2     the Court would lift the protective order in this case, since
 3     under the language of the stipulation -- and we pointed, if the
 4     information is otherwise made publicly available.
 5              THE COURT:  That's something I do want to talk to the
 6     city about.
 7              If it is publicly available, then I don't understand
 8     why you can't use publicly-available information in drafting
 9     your suit, or for whatever other purpose.  If something is
10     publicly available and I can get it and anybody who is in the
11     public library can get it, or using the Internet can get it, if
12     anybody calls the city's green book office, can get it, then it
13     is public.
14              Can you do this from public information or not?
15              MS. COSTELLO:  It is not that publicly available.
16              THE COURT:  You can't have it both ways.  If it is
17     public you can use it and I don't think the city can ever argue
18     that you can't.
19              Once you backtrack and say it is really not public,
20     then you are making their argument.
21              MS. COSTELLO:  It is public.  The only problem is that
22     the information that the city has put out, just as Ms.
23     Grossman's letter said, it is our data, we can use it however
24     we would like to.  The information that's been put out by the
25     Rand Corporation, and we have a copy of the study, is that the
```
                SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

7clPdanC

1      Rand Corporation and the NYPD's spin using magic wands about
2      what the data means, our analysis and conversation with an
3      expert shows us different things, that the Rand information has
4      used benchmark and other statistical methods to explain away.
5      So it is publicly available in the sense that the NYPD and the
6      Rand publication has written details in the Daily News and
7      otherwise made that information available.  But in the sense
8      the data that we have that may differ from what the city has
9      put out, is not publicly available.  Because that's our
10     analysis and that's our impressions and our statisticians and
11     numbers of what the patterns show.
12             So our information is different than what the city
13     has, some of which is the same.
14             Rand reached some of the same conclusions about the
15     data.  But they have also ignored some of the other
16     information, particularly racial disparities and the frisks
17     leading to arrests and the weapons recovery that we think are
18     indicative of racial profiling.
19             MR. FRANKLIN:  Your Honor, in terms how the data is
20     collected, we have the data on discs from the city, which makes
21     it that much easier to compute.
22             This information is public, but it is public in hard
23     copies.  And so it is public not only through the Rand study,
24     but also through the study that they, the city, gave to the
25     city counsel.  But they are both access to the data is here,
                SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

7clPdanC

1   but it is in a format which is highly unusable in terms of
2   making statistical analysis and breaking down data, which would
3   take us months to recompile.
4          THE COURT:  As I was saying earlier, Ms. Costello
5   responded with how difficult it would be to get the material
6   again.  There is enough in the public record to craft the suit.
7   And then in that suit simply say, we want produced all that was
8   produced in the 1999 lawsuit.
9          I don't know how you could lose getting it.  It may be
10  a question of whether it is still going to be under protective
11  order or not.  But I can hardly imagine not getting it.  You
12  know what I am saying?  It is so obvious to me that any Judge
13  would require them to reproduce it to you in the same format
14  that you have it, that you will have it again.  Whether or not
15  it remains confidential.
16         MR. FRANKLIN:  We'll have it again, but we have to go
17  through the same process we have gone through.  We have to turn
18  everything back to the city under this protective order.  So if
19  we get it back we have to again recalculate the same
20  information that we already have.
21         THE COURT::  You have to go through recalculating?
22  Why would that be?
23         MR. FRANKLIN:  Because under the protective order we
24  have to give them back that information.
25         THE COURT:  Not just what they gave you?
           SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

19
7clPdanC.
1           MR. FRANKLIN:  If my reading is correct, it's what
2     they gave us and --
3           MS. COSTELLO:  -- everything derived from the UF250
4     database.  So it is the actual physical discs that the data is
5     contained on, which are thousands and -- tens -- hundreds of
6     thousands of entries, as well as any information that we
7     derived.  So any of the work that our statistician has done
8     with coding, would have to be given back to the city.  We
9     couldn't retain that information.
10          THE COURT::  Your attorney work product and published
11    material, all that stuff would have to go back?
12          That seems odd to me.  I don't know why it can't be
13    stored under the terms of confidentiality.  This is not
14    practical.
15          MS. COSTELLO:  Your Honor, if I could, I am just going
16    to take one minute and look at the protective order to make
17    sure.
18          MR. FRANKLIN:  Unless the city disputes that.
19          THE COURT:  We aren't getting too far off the
20    substance, are we?
21          MR. MOORE:  Judge, the protective order --
22          THE COURT::  -- where is that?  Do I have that?
23          MR. MOORE:  I don't think you have a copy.
24          THE COURT:  Do you have that, Ms. Grossman?  Is that
25    attached --
             SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

```
        7clPdanC
1               MS. GROSSMAN:  -- your Honor --
2               MR. MOORE:  -- I can hand you up a copy, Judge.
3               THE COURT::  This is June 31, 2000 -- I'm sorry --
4       January 31, 2000.  Yes, it will be eight years this January.
5               MR. MOORE:  Paragraph 7, I think, is the provision
6       that is at issue here.
7               THE COURT::  Let's read it.  (Reading)  Within 30 days
8       after the termination of this case, including any appeals, the
9       confidential materials, including all copies, notes and other
10      materials containing or referring to information derived
11      therefrom, shall be returned to the producing party's
12      attorneys, or upon their consent, destroyed.  And all persons
13      who possess such materials shall verify their return or
14      destruction by affidavit furnished to the producing party's
15      attorneys.  And paragraph 8 says:  (Reading)  The terms of this
16      order may be modified by further order of the Court.
17              So obviously 30 days after termination of this case is
18      January 30, 2008, right?  If the case terminates December 31 --
19              MS. GROSSMAN:  -- I think, your Honor, the termination
20      date was the termination when we entered into the effective
21      date of the agreement.
22              THE COURT:  It couldn't be, because -- they would have
23      owed this stuff back to you years ago.
24              MS. GROSSMAN:  They did.  They returned all documents
25      they were required to return when the agreement was executed,
                SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
```

7clPdanC

1    and when it was finalized by the Court.

2         So the agreement incorporates the protective order and

3    basically says that the plaintiffs need to return the

4    documents, maintain the confidentiality, and return them after

5    the agreement sunsets.  That's expected after the agreement

6    terminates.

7         The protective order was, the plaintiffs were subject

8    to the protective order, to maintain the confidentiality,

9    but --

10         THE COURT:  -- I am not following you at all.

11         I still say they don't have to return all that they

12    now still retain until January 30, 2008, thirty days after the

13    termination of this case.

14         I am still supervising this case, that's why you are

15    worried about my extending it even one day, because my

16    supervision runs out on December 31, '07.  So I still have this

17    case.  So, therefore, it is not 30 days after the termination

18    of this case.  They are talking about the very material they

19    have --

20         MR. MOORE:  We got material --

21         THE COURT:  -- as recently as October.  So, of course,

22    you didn't return it 30 days after the case number was closed.

23    Obviously it is not due back till January 30 or 31st of 2008.

24         All I am saying is, by then if you have a lawsuit

25    pending and need the very same material, and I have the

7clPdanC

1 authority to modify the terms of this order by a further order
2 of the Court, which the city agreed to, then I will, and I will
3 say, you have the material, hold on to it, remains
4 confidential, somebody says otherwise, and use it as you need
5 to use it in your new lawsuit.
6    I don't want to play games here, if there is a
7 violation of the city's racial profiling policy -- that's not
8 what it is called,.
9    MR. MOORE:  That's what it is called.
10    THE COURT:  Okay.  Strange.  Kind of a --
11    MR. MOORE:  -- it should be nonracial.
12    THE COURT:  Yes.  If there is a violation of it, there
13 is a violation, and that's a lawsuit, and that's that.
14    It still strikes me as making it more difficult, a
15 square peg in a round hole, to force it into this stipulation
16 of settlement, and got into all these questions about you tried
17 to get a guarantee.
18    You didn't get a guarantee, you fought for it, but
19 they stood firm and they didn't get it to you.  La, la, la.
20 But okay, this is only the beginning.  We can go through their
21 whole letter and respond to all their points.  We didn't get
22 too far.  You were going to -- we started with C1.
23    MR. MOORE:  Just one second, Judge.
24    THE COURT:  Yes.
25    (Discussion off the record)
    SOUTHERN DISTRICT REPORTERS, P.C.    (212) 805-0300

7clPdanC

```
 1              MS. GROSSMAN:  Your Honor, if I may just address the
 2    issue of the confidentiality.
 3              THE COURT:  Yes.
 4              MS. GROSSMAN:  If you were to look at paragraph 4 --
 5    I'm sorry, H4.
 6              THE COURT:  What stipulation of settlement, A4?
 7              MS. GROSSMAN:  H4.
 8              THE COURT:  Yes, okay.
 9              MS. GROSSMAN:  If you would bear with me, your Honor.
10    If I could just walk you through the first and explain what it
11    refers to.  The first on paragraph 4 page 11 it says, all
12    confidential documents --
13              THE COURT:  -- wait a minute, I am on page 11 -- oh,
14    H, okay.
15              MS. GROSSMAN:  (Reading)  All confidential documents
16    subject to the January 31, 2000 protective order, and copies
17    made thereof, produced to plaintiffs by defendants prior to the
18    effective date, shall be returned to the Corporation Counsel's
19    office upon the effective date.  Unless prior to that date
20    defendants have expressly authorized the retention of specific
21    documents itemized in writing by plaintiffs until, at the
22    latest, the termination of the stipulation.
23              Now, let me just take a break.  That information was
24    all the documents provided during the litigation.  The
25    plaintiffs complied with that provision in the agreement and
```

24

7clPdanC

1  returned all the documents to the city with the exception of a
2  few items that they wrote -- put in writing, and they were
3  allowed to maintain.
4       Now we move on to all documents provided to plaintiffs
5  in any form by defendants under the terms and during the course
6  of this stipulation shall be deemed confidential, and
7  plaintiffs shall return to the Corporation Counsel's office all
8  such documents, and any copies made thereof, upon the
9  termination of this stipulation.
10       So at the very least we know that posteffective date
11  of the agreement, the plaintiffs, under the terms of this
12  agreement, which they contracted for, which we all agreed to,
13  are to be returned to the city.
14       THE COURT:  Well, that's good, but I don't think it is
15  good enough.  Because I think the Court's order is ambiguous or
16  contradictory to that by saying that it extends to 30 days
17  after the termination of this case.
18       Now, you want to interpret the phrase termination of
19  this case differently than I do.  I don't have it in front of
20  me, I will find it.  Actually it is attached to this in the
21  protective -- the protective order --
22       MR. FRANKLIN:  -- it's the last attachment.
23       THE COURT:  I have it dated January 31, 2000.  Is that
24  part of the stipulation of settlement -- yes, it must be,
25  Exhibit C to the stipulation of settlement.  And the exhibit

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

25
7clPdanC

1    itself says, the very date of the termination of this case.  So
2    I have essentially two clauses of the same stipulation of
3    settlement that disagree.  And --
4              MR. MOORE:  -- essentially what we are talking about
5    is 30 days.
6              THE COURT:  Oh, I understand.  But the city does not
7    want you to have these to be able to craft this complaint.  And
8    it also seems childish to me.  It is in your letter, it is all
9    there already.
10              As I say, I have got two conflicting clauses in front
11    of me, they are both part of the settlement,.
12              MS. GROSSMAN:  I believe, your Honor, if you were to
13    look at paragraph 4, the plain meaning --
14              THE COURT:  -- 4?
15              MS. GROSSMAN:  -- the same --
16              THE COURT:  -- H4.
17              MS. GROSSMAN:  H4.
18              THE COURT::  I know what H4 said, I don't even argue
19    that it is wrong, but it conflicts with Exhibit C.  Exhibit C
20    tells me that within 30 days of termination of the case, and I
21    say this case is open until the Court's supervision ends on
22    December 31 of 2007 --
23              MR. MOORE:  -- Judge --
24              THE COURT:  -- and it says that I have the power to
25    modify that protective order at any time.
              SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

26

7clPdanC

```
 1              In terms of this -- by further order of the Court.
 2              So I certainly have the power to modify that
 3       protective order until December 31 of '07.
 4              And so to that extent, I surely would modify it to my
 5       own reading of it, which is 30 days after the case terminates,
 6       which is January 30, '08.
 7              I am happy to keep going with your letter if you want
 8       to go through chapter and verse, and try to still make your
 9       points in your letter, try to convince me.  I don't like the
10       idea of having to work on it in the next eight days under that
11       gun.  But that's what it is coming to.  It does not seem to me
12       that would be.
13              MS. COSTELLO:  Your Honor, putting aside the issue of
14       the modification as it relates to the racial profiling issues.
15              THE COURT:  Let's turn to something else then.
16              MS. COSTELLO:  The specific performance issues other
17       than that which would include the training.
18              THE COURT::  Let's talk about it.  The city wrote
19       about that too.  I don't see a subheading actually called
20       training.
21              Ms. Grossman can tell me where in this letter it is?
22              MR. MOORE:  Subsection C.
23              THE COURT:  Subsection C.  There it is, training,
24       okay.
25              MS. COSTELLO:  Basically under the agreement section,
```
         SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

27

7clPdanC

1  and I will point the Court to C5, and actually section E, of
2  the stipulation --
3              THE COURT:  -- E is the one they refer to?
4              MS. COSTELLO:  Yes.
5              THE COURT:  Training.
6              MS. COSTELLO:  We've had several conversations with
7  the city through letters and verbally about the fact that there
8  has never been any verification that the training specified in
9  section E has occurred.
10             The city's position is, as I understand it, is that we
11  are not entitled to it.  And we would disagree with that.
12             THE COURT:  Let's look at the plain language of the
13  settlement agreement.
14             I don't know how much we are going to have to read,
15  but we will read as much as we have to.
16             1:  The NYPD has conducted in-service training
17  regarding the racial profiling policy, which has been presented
18  to NYPD commands.  The NYPD shall provide annual in-service
19  training regarding the racial profiling policy.
20             2:  The NYPD shall maintain that portion of the police
21  academy curriculum that pertains to training regarding the
22  racial profiling policy.
23             3:  The NYPD shall continue to train police officers
24  about the legal and factual bases for conducting and
25  documenting stop, question and frisk activity.  Continue to
                SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

```
7clPdanC
```

1    implement the police academy curriculum for training police
2    officer recruits about the legal and factual bases for
3    conducting and documenting stop, question and frisk activity.
4    And continue to provide training for police academy
5    instructors.
6              MR. MOORE:  -- Judge --
7              THE COURT:  -- about the legal and factual bases for
8    conducting for and -- and then all I can say is that paragraph
9    4 says, the NYPD shall continue to train, and 5 says the NYPD
10   shall continue to provide training.
11             Number 6 says, the police academy will continue to
12   consider informally, factual incidents brought to its attention
13   for use in training.
14             7 says, the NYPD is reviewing the recruit curriculum
15   and is part of the process, the Commissioner will conduct a
16   review.
17             8 says, the NYPD will continue to provide full
18   promoted sergeants and lieutenants with training,
19             9:  The municipal defendants have provided to -- and
20   10 says:  The NYPD shall continue to document training provided
21   for in this stipulation in the same manner and consistent with
22   existing practices and procedures employed by the NYPD.
23             Now, I have read it all.  Nowhere does it say they
24   will turn anything over to class counsel or report to class
25   counsel.

7clPdanC

```
 1              MR. MOORE:  To verify, the word verification does not
 2     appear.
 3              THE COURT:  Or report or turn over --
 4              MR. MOORE:  -- if you look at subsection C5 of the
 5     agreement.
 6              THE COURT:  Okay, let me now turn to C5.
 7              The NYPD shall supervise, monitor and train officers
 8     regarding the racial profiling policy as set forth below.
 9              MR. MOORE:  So that's an affirmative duty on the NYPD.
10              THE COURT:  That's true.
11              MR. MOORE:  To supervise, monitor and train officers
12     regarding the racial profiling.
13              In order to determine whether they are fulfilling
14     their duty, whether they have lived up to the terms of this
15     agreement, we would argue that they should tell us what they
16     are doing.
17              THE COURT:  Why didn't you get that into the
18     agreement?  Why didn't you say, shall produce on a quarterly
19     basis its training materials for counsel's review?
20              There is nothing in there.  There are no obligations
21     other than to do it.  But not to let you know through
22     documentation.
23              MR. MOORE:  But if they are not doing it, the only way
24     we can know if they are not doing it is by asking them if they
25     are doing it.
```

```
         7clPdanC
 1                THE COURT:  I understand.
 2                MR. MOORE:  It seems to me that that's an inherent
 3       obligation on the part of the city.
 4                THE COURT:  But this thing was signed January 9, 2004.
 5       I mean, that's almost four years ago.  Did you ever write them
 6       a demand letter and say, please document that you are doing
 7       training?  Or we believe you are -- or we believe you are not
 8       doing training, we are worried about that, please send us
 9       copies --
10                MS. COSTELLO:  -- we did --
11                THE COURT::  -- why are we doing this on December 21
12       of '07?
13                MS. COSTELLO:  We did, your Honor, we asked in April,
14       and some of those letters were provided to the Court.
15                THE COURT:  '07?
16                MS. COSTELLO:  Yes, this year.  We asked them in
17       February, in April.
18                THE COURT:  For what?
19                MS. COSTELLO:  For proof that they were conducting the
20       training in accordance --
21                THE COURT:  -- and their response was?
22                MS. COSTELLO:  That they did not read the stipulation
23       to require it.
24                THE COURT:  Why didn't you come to court then?  It is
25       nine days before December 31.
              SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
```

7clPdanC

```
 1              MS. COSTELLO:  Part of this, your Honor, is that we
 2     were attempting to work it out with the city.  Ms. Grossman and
 3     I, in September, were --
 4              THE COURT:  -- I hear you.  But the position you put
 5     me in is to have some kind of real brief motion, you would like
 6     to brief these issues, you would like to brief Ruffo and its
 7     progeny orally.  You want your brief due on 10 a.m. on the 26th
 8     and their brief at 10 on the 28th, and the reply on the 31st?
 9              MS. COSTELLO:  That's what we proposed, there be six
10     months of extension.
11              THE COURT:  Haven't we been down that road once?
12              MS. COSTELLO:  Yes, we have, your Honor.  Some of the
13     cases that we cited before we would still say that the
14     equitable power of the Court --
15              THE COURT::  Didn't I do it and undo it?
16              MS. COSTELLO:  You did undo it.
17              THE COURT:  And wrote an opinion too.
18              MS. COSTELLO:  Part of that, your Honor, was that we
19     had not followed the dispute resolution in the decree and we
20     have --
21              THE COURT:  -- they wrote you didn't.  Didn't you
22     write that, Ms. Grossman, they didn't follow the dispute
23     resolution again?
24              MS. GROSSMAN:  That's right.
25              MS. COSTELLO:  We disagree.
```
              SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

7clPdanC

```
 1              THE COURT:  But I am not being given much time to
 2    understand that.  They are saying you didn't, they are saying
 3    something about 30 days.  In what way didn't they file a
 4    dispute resolution --
 5              MS. GROSSMAN:  -- they were supposed to wait until 30
 6    days to seek relief from the Court.
 7              THE COURT:  Wait until 30 days from what?
 8              MS. GROSSMAN:  From the date that they have, gave
 9    notification to us.  The notification that they are required to
10    give is by fax and hand service.
11              THE COURT:  And they faxed you a letter.
12              MS. GROSSMAN:  Friday evening.
13              THE COURT:  December what?
14              MS. GROSSMAN:  November 30, Friday evening, 7:03 p.m.
15    And they did not deliver a document by hand Friday for us to
16    have notice.  And it wasn't until Monday, December 3, there was
17    no by hand delivery at all.  So they haven't complied with the
18    terms of the agreement in terms of giving proper notice, which
19    then would bring us beyond the December 31 sunset provision in
20    terms of when they would be able to seek relief from the Court.
21              The first time they raised the issue about the racial
22    profiling was on November 30.
23              MR. MOORE:  Judge --
24              MS. GROSSMAN:  -- the first time they raised an issue
25    about another item concerning joint community forums was on
```

SOUTHERN DISTRICT REPORTERS, P.C.            (212) 805-0300

```
       7clPdanC
 1     November 30.
 2              THE COURT:  Which falls within the 30 days.  But you
 3     are saying out of the technicality, the reason that it is
 4     important was because, that's important because you weren't in
 5     the office at 7:03 on a Friday night and didn't see it until
 6     Monday.
 7              The city is saying it didn't have actual notice on
 8     November 30, but on December 3.
 9              MR. MOORE:  We were before you in April, and we were
10     raising the issues about the fact that they hadn't produced the
11     database.  And, you know, we didn't get that until October.
12              THE COURT:  I know --
13              MR. MOORE:  -- that sort of sidetracked us a little
14     bit.  And I think, though, that now that we have had the
15     data --
16              THE COURT::  -- but that didn't relate to things like
17     not having proof of training, and proof of community forum,
18     which you didn't think was going on.  There were other
19     complaints that you could have raised in time to get some real
20     rulings on violations or not.
21              I might have still said at the end of the day, with
22     respect to training, they undertook no obligation to report to
23     you, you would argue back, no, but they took on an obligation
24     to do it, how are we supposed to judge compliance if we can't
25     get discovery.  But discovery is different than a reporting
```

34
7clPdanC
1    requirement.
2              MR. MOORE:  I guess it brings me to my other point
3    which if, in fact, the city is of the opinion that all they
4    have to do is have a written policy, and they have a written
5    policy, what harm is there to the city in agreeing to extend
6    this for two months, three months, whatever it may be, if in
7    fact, as they say, are all that it requires them to do is have
8    something on paper that says we won't engage --
9              THE COURT:  -- you don't know if they have a written
10   policy?
11             MR. MOORE:  I do know that they implemented a written
12   policy.  There was -- I haven't looked at it in the last few
13   weeks.  But I do believe there is a written policy.
14             My point is that if, in fact, all they are required to
15   do under this settlement agreement is to have a written policy,
16   what harm is there in extending this agreement for a couple of
17   months, for us to resolve these issues and decide, for
18   instance, decide whether we want to just put this thing to bed
19   and, you know, start another case.  If that's what we want to
20   do.
21             If we believe that that evidence of racial profiling
22   is there, you make a very strong point about trying to put a
23   square peg in a round hole, whatever that might be.  But my
24   point is, what harm would there be -- I guess the answer is,
25   it's a common-sense argument.  It is not a lawyerly argument.
               SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

7clPdanC

1    That's the problem.
2         THE COURT:  Unfortunately we all chose this
3    profession, and some days we ask yourselves why.
4         Lawyers have the right to stand on technicalities.
5    The Supreme Court issued some opinion last year that said, yes,
6    the federal Judge -- that -- the Supreme Court said you are
7    time barred, you have to file an appeal ten days after
8    judgement, telling your attorney you want an appeal is not
9    enough.  You should have listened to that Federal Judge.
10        The consenting Justices were outraged, but there you
11   have it.  The other justices thought it was a fine thing to say
12   it on the technicality.  The District Judge told the prisoner
13   you have that time.  A career prisoner should have known better
14   than a federal Judge.  The law is full of technicalities.
15        Why doesn't the city agree to extend it?  Because they
16   don't want to.  And if they don't have to, they don't want to.
17        What am I going to do?  Tell them, practically
18   speaking, he's right, why don't you give us all time to brief
19   this and decide this?  They could say, that's very nice, but we
20   decline.
21        You want me to get it on the -- would you agree to
22   extend this two to three months?  We can get a briefing
23   schedule.
24        MS. GROSSMAN:  Your Honor, I am not authorized to
25   agree to that.
          SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

7clPdanC

```
 1              MS. COSTELLO:  I have one point on the training issue,
 2    Exhibit 1 to our letter, the December 4 letter that I wrote to
 3    Ms. Grossman.  If you look at the third page -- page 2 at the
 4    bottom --
 5              THE COURT:  -- I got a problem, the November 30
 6    letter --
 7              MS. COSTELLO:  -- no, I'm sorry, the letter that we
 8    delivered to the Court last Friday.
 9              THE COURT::  Oh, yes.
10              MS. COSTELLO:  Exhibit 1 to that.
11              THE COURT::  Exhibit 1 is the November 30 letter.
12              MS. COSTELLO:  Maybe it is Exhibit 2, your Honor.
13              THE COURT:  Exhibit 2 is the February 16 letter.
14              MS. COSTELLO:  There should be a September 4 letter,
15    your Honor.
16              THE COURT:  That's Exhibit 3.  Page 2 at the bottom.
17              MS. COSTELLO:  On the next page we explain to the city
18    that we think they are not in compliance with the training
19    requirements, just as we thought they were not in compliance
20    with the auditing of the training requirements.
21              THE COURT:  But you didn't bring it to my attention,
22    is all I am trying to say.  Of course, now what you are saying
23    is you did satisfy the dispute resolution mechanism.  Is that
24    your argument, that by the September 4 letter you did, in fact,
25    satisfy the dispute resolution requirement?
```

7clPdanC
```
 1              MR. MOORE:  Yes.
 2              MS. COSTELLO:  As Ms. Grossman and I had conversations
 3    in which we were attempting to see if the city would give us
 4    some documentation showing that the training had occurred.
 5              THE COURT:  Ms. Grossman, did the plaintiff satisfy
 6    the dispute resolution by raising the issue on September 4?
 7              MS. GROSSMAN:  On the training?
 8              THE COURT:  In writing.
 9              MS. GROSSMAN:  The one piece on the training, yes.
10    But when I mentioned that the issue about the racial profiling
11    was first -- first --
12              THE COURT:  -- but we got lots of issues.  Let's deal
13    with training.
14              So they satisfied the dispute --
15              MS. GROSSMAN:  -- yes.
16              THE COURT:  What flows from the fact that they said
17    the dispute resolution mechanism on the training point?  And
18    you raised some kind of defense.
19              MS. GROSSMAN:  I'm sorry, your Honor, were you
20    addressing me?
21              THE COURT:  I said, what flows from the fact that they
22    satisfied the dispute resolution mechanism.
23              MS. GROSSMAN:  Our response to that, your Honor, was
24    that they misinterpreted the agreement, that they are rewriting
25    the agreement.
```
SOUTHERN DISTRICT REPORTERS, P.C.              (212) 805-0300

7clPdanC

1          THE COURT:  Meaning procedurally, if they satisfied
2     the dispute resolution mechanism by giving you 30 days, what
3     flows from that, they are allowed to come to court.
4          MS. GROSSMAN:  Yes.
5          THE COURT:  So they alluded to come to court on that
6     one because they satisfied the dispute -- and they want to say
7     because of, in their view, of the training requirement being
8     violated, that is a basis for this Court to extend supervision,
9     and/or compel specific performance.
10          MS. GROSSMAN:  Your Honor, the agreement is very
11    specific.  It permits specific performance.  And then I would
12    submit, your Honor, that they have to provide sufficient notice
13    to the Court to enable all parties to perform.  And to give
14    seven days.  And to give notice on this schedule is not what I
15    believe is contemplated by the agreement.
16          THE COURT:  Well, I don't know.  They satisfied the
17    dispute resolution mechanism, we all agree with that, on this
18    issue, and they, then they have the right to come to court.
19    And they have come to court.
20          I can say, based on their complaint regarding
21    training, I need to have full briefings in order to give the
22    Court an appropriate amount of time to decide whether there has
23    been a violation.  I have to extend the deadline to decide the
24    motion properly.
25          MS. GROSSMAN:  We would submit, your Honor, that
          SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

7clPdanC
1    that's not the dispute -- that is not a remedy available under
2    the agreement.
3             THE COURT:  The remedy you agreed to is, they can
4    bring a dispute to court after giving you 30 days notice.
5             MS. GROSSMAN:  But there is no --
6             THE COURT:  -- inherent power.  I can't decide a
7    motion that's not briefed.  It is timely, it was brought before
8    the expiration of this agreement, they satisfied the dispute
9    resolution mechanism, the Court has the power to operate its
10   own docket.  I can't decide a motion, an important one, that's
11   not briefed.
12            Is there any other exhausted issue, so to speak,
13   besides the training one?  Should we continue with the letter
14   since they agreed that you -- what's the next one?
15            MS. GROSSMAN:  Your Honor, I would just add on the
16   training piece, there is no good-faith belief given.  What we
17   just walked through of the verification that there was an
18   absence of language --
19            THE COURT:  -- but Mr. Moore makes some practical
20   point.  There is no point in the city agreeing to do something,
21   there is no way to find out whether they did comply.  Otherwise
22   you have a right without a remedy.  You have a meaningless
23   agreement.
24            That cannot be the intent of the parties to say, we
25   will provide training but ha, ha, if we don't, you can't find
              SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

                                                                   40
            7clPdanC
 1     out and you can't take us to go task for it.  That can't make
 2     sense.
 3                 MS. GROSSMAN:  Your Honor --
 4                 THE COURT:  -- but I am going to run out of time and
 5     patience shortly.  I would like to move right past the training
 6     to the next exhaustive claim.  Is there another --
 7                 MS. GROSSMAN:  -- may I just be heard once on the
 8     training?
 9                 THE COURT:  No.
10                 MS. GROSSMAN:  To talk -- we had negotiations on the
11     document being --
12                 THE COURT:  -- no.
13                 MS. GROSSMAN:  -- bank added to the agreement and we
14     rejected it --
15                 THE COURT:  -- no --
16                 MS. GROSSMAN:  -- the plaintiffs wrote --
17                 THE COURT:  -- no, I don't want to hear anymore about
18     training.  I want to hear other issues that are ready for the
19     Court.
20                 What other issues have you exhausted?
21                 MS. COSTELLO:  We are going to concede the other two
22     issues, they are minor.  We think the training is the --
23                 THE COURT:  -- the city says they have a right to
24     stand on the technicality on the violation of the racial
25     profiling policy, you didn't give them the notice till December
                 SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

```
      7clPdanC
 1    3, so you can't bring that one to court in time for the
 2    stipulation of settlement to expire.  So the only one that's
 3    live is the training.
 4            If that's all we have to do between now and the 31st,
 5    maybe we can brief it and decide it.  It is one issue not five,
 6    not four, not six.
 7            I still say, putting a square peg in a round hole and
 8    all you have to do is bring a lawsuit, my interpretation of
 9    that protective order is that you have the documents till the
10    end of January.
11            MR. FRANKLIN:  Your Honor, can we take two minutes?
12            THE COURT:  Please.
13            (Recess)
14            THE COURT:  Mr. Moore.
15            MR. MOORE:  Judge, after consulting with my
16    colleagues, I think we have come to a position that if we
17    have -- if the Court is willing to permit us to hold the data
18    that we have until the end of January, 30 days after the
19    expiration of this agreement, we would be willing to withdraw
20    this motion at this point.  And engage in this process of
21    bringing another lawsuit or not.
22            THE COURT:  I think I said it many times on this
23    record, that that's my interpretation of this agreement.  And
24    that is the way I am ruling, that's what it said, 30 days after
25    the termination of this case, which to me it finally
```

42
7clPdanC
1    terminates, termination December 31, '07, they remain
2    confidential.  But that doesn't mean you can't use them.
3            MR. MOORE:  To the extent that some of the materials
4    have already been made public, --
5            THE COURT:  -- what's public is public.  If you cite
6    to the Rand study, publicly, nobody can criticize you for that.
7    If they do, they weren't acting in good faith.  If I can get
8    the Rand study on the Internet, it is public --
9            MR. MOORE:  -- you can go to the NYPD website, your
10   Honor.
11           THE COURT:  There you go, that's public.  You can use
12   that.  And as I said before, I would accept it as a related
13   case, which the plaintiff has the power to designate.
14           I think this current motion is withdrawn.  Thank you.
15           ALL COUNSEL:  Thank you, your Honor.
16
17                             o0o
18
19
20
21
22
23
24
25
         SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300